UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLIE SAMMONS, JR.,

       Plaintiff,                  CIVIL ACTION NO. 12-11791

    v.                            DISTRICT JUDGE AVERN COHN

                                  MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 8, 11)**

Plaintiff Billie Sammons, Jr. challenges the Commissioner of Social Security's final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 11). Judge Avern Cohn referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.    RECOMMENDATION**

Because the administrative law judge ("ALJ") did not thoroughly discuss Plaintiff's nonexertional limitations and failed to properly apply the treating source rule, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner.

**II.    DISCUSSION**

    *A.    Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision

-2-

pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See*

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.   REPORT

### A.   *Administrative Proceedings*

Plaintiff applied for supplemental security income on January 29, 2009, alleging he became disabled on November 26, 2008 (Tr. 20).  After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a hearing before ALJ Lantz McClain, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 20-28).  Plaintiff requested an Appeals Council review (Tr. 15).  On March 28, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B.   *ALJ Findings*

Plaintiff was 40 years old on his disability onset date (Tr. 27).  He has a GED and past relevant work as an apartment maintenance man (Tr. 27, 46).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since his disability onset date (Tr. 22).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease of the lumbar spine with radiculopathy[1] to the right lower extremity

---

[1]Radiculopathy is a disease of the nerve roots.  *See Dorlands Illustrated Medical Dictionary*, 1595 (31st Ed. 2007).

and degenerative joint disease of the right knee (Tr. 22). The ALJ found Plaintiff had the non-severe impairment of drowsiness (Tr. 22).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 23).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> the full range of sedentary work . . . . He can occasionally lift and/or carry 10 pounds and frequently lift and/or carry up to 10 pounds. He is able to stand and/or walk for at least [two] hours in an [eight]-hour workday. He can also sit for a total of at least [six] hours during the same workday, all with normal breaks.

(Tr. 23).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as an apartment maintenance man (Tr. 26-27).

At step five, the ALJ denied Plaintiff benefits, finding he could perform a significant number of jobs available in the economy (Tr. 27).

### C. Administrative Record

#### 1. Plaintiff's Hearing Testimony and Statements

Plaintiff testified that he has back pain that radiates down to his foot; leg pain; memory problems; drowsiness; confusion; fatigue; and trouble concentrating, completing tasks and sleeping (Tr. 47-49). Plaintiff often forgets conversations he has had with family members and unnecessarily repeats them. He also forgets items he was supposed to buy at the grocery store (Tr. 48).

According to Plaintiff, he can go to the grocery store, but he cannot do housework or yard work (Tr. 50); he can only lift five pounds and walk for less than 15-20 minutes (Tr. 49-50).

### 2. Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual who "can't complete an eight-hour day, five days a week" (Tr. 52). The VE testified that such an individual could not perform Plaintiff's past relevant work as an apartment maintenance man or any other work (Tr. 52).

### D. *Plaintiff's Claims of Error*

Plaintiff argues that: (1) the VE's testimony does not support the ALJ's conclusion that Plaintiff can perform a significant number of jobs available in the economy; and (2) the ALJ erred by giving Dr. Bruce D. Abrams and Dr. Jeffrey Edwin Middeldorf's opinions – one time examiners – more weight than his treating physician's opinion.

### 1. Vocational Testimony

At step five of the disability analysis, the Commissioner has the burden of showing there are a significant number of jobs available in the national economy that Plaintiff can perform. *See Collins v. Comm'r of Soc. Sec.*, 357 Fed.Appx. 663, 670 (6th Cir. 2009) (citation omitted). "The Commissioner may meet his burden at step five by referring to the Grids unless the claimant has a 'nonexertional limitation[] that significantly limit[s] the range of work permitted by his exertional limitations.'"[2] *Id.* (quoting *Cole v. Sec'y of HHS*, 820 F.2d 768, 771 (6th Cir. 1987)). Examples of nonexertional limitations include nervousness, anxiousness, depression and difficulty maintaining attention or concentration. 20 C.F.R. § 404.1569a(c). "[B]efore reaching the conlcusion that the grid will not be applied because claimant alleges nonexertional limitations, those nonexertional limitations must be severe enough to restrict a full range of gainful employment at the designated level." *Kirk v. Sec'y of HHS*, 667 F.2d 524, 537 (6th Cir.

---

[2]"The Grids" refer to the Medical Vocational Guidelines.

1981). When the Grids are applied, the VE's testimony is immaterial to the ALJ's finding that Plaintiff is not disabled. *See Atterberry v. Sec'y of HHS*, 871 F.2d 567, 572 (6th Cir. 1989).

There is evidence that Plaintiff has nonexertional limitations. On February 4, 2010, Plaintiff's treating physician, Dr. Peter Graham, indicated that Plaintiff's symptoms were likely to interfere with attention and concentration (Tr. 282). A Psychological Evaluation Report dated April 20, 2010 indicated Plaintiff felt depressed, and he was diagnosed with major depressive disorder (Tr. 318-319). Plaintiff also received this diagnosis on May 10, 2010, May 18, 2010, May 24, 2010, June 1, 2010 and June 9, 2010 (Tr. 324, 326, 328-329, 334); he felt depressed on January 26, 2010, May 24, 2010 and August 9, 2010 (Tr. 367, 372, 375). On July 14, 2009, Plaintiff had trouble concentrating, and he was depressed (Tr. 380). On July 8, 2010, Plaintiff's wife reported that he has "unpredictable" and "fairly brief" episodes of memory loss (Tr. 369). Finally, Plaintiff testified at the hearing that he has memory problems and trouble concentrating (Tr. 48).

"Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations." *Shelman v. Heckler*, 82 F.2d 316, 321 (6th Cir. 1987) (citations omitted). The ALJ did not cite "reliable evidence" showing Plaintiff's depression, memory problems and trouble concentrating do not "significantly limit" his ability to perform work at the sedentary level: he simply acknowledged Plaintiff's testimony regarding his memory and concentration problems and stated Plaintiff remained negative for depression and anxiety on February 25, 2009 (Tr. 24).

This case should be remanded for further consideration of whether it was appropriate to rely on the Grids. On remand, the ALJ must determine if Plaintiff's nonexertional limitations are

-7-

supported by substantial evidence in record. If not, the ALJ need not consider them or incorporate them into the RFC, and reliance on the Grids is appropriate. If the ALJ determines that Plaintiff's nonexertional limitations are severe and incorporates them into the RFC, he must determine whether the nonexertional limitations have any effect on the occupational base of jobs at the sedentary level. If not, reliance on the Grids is appropriate. Otherwise, the ALJ must rely on VE testimony at step five of the disability analysis to determine whether there are a significant number of jobs available in the national economy that Plaintiff can perform. *See Boley v. Astrue*, No. 11-10896, 2012 WL 680393 at *8-11 (E.D. Mich. Feb. 10, 2012).

## 2.     Treating Source Rule

Drs. Abrams and Middeldorf saw Plaintiff once for an independent medical evaluation regarding his back (Tr. 262, 272). Neither doctor established a physician-patient relationship with Plaintiff: they simply reviewed his medical records and performed an examination (Tr. 262, 272). As such, they are considered non-treating sources. Dr. Abrams summarized his findings as follows:

> [Plaintiff's] physical examination does show a slightly reduced right Achilles reflex. Sensation is intact. He does have subjective tenderness to palpation of the lower back and some reduction of his range of motion subjectively. He does not show clear evidence of significant reflex, sensory or motor deficits.
>
> He has at present been referred to the University of Michigan Neurosurgery Department and Spine Center for further evaluation and treatment. At this time, further evaluation is appropriate. He does not appear to be a surgical candidate at this time. He should be maintained on medication that does not include narcotic analgesics.
>
> He has not reached a healing plateau for the injury of November 2008.[3]

---

[3]On November 26, 2008, Plaintiff sustained a work-related injury while working for Irish Development of East Lansing. He was unloading a pallet of bags of salt when he slipped on ice, fell and sustained a back and head injury (Tr. 262-263).

> I do believe he can work in a restricted activity with lifting no more than 25 [pounds].

(Tr. 267). And, Dr. Middeldorf reached the following conclusion:

> [Plaintiff] is at maximum medical improvement through therapeutic modalities attempted thus far. He has not been found to be a surgical candidate at the University of Michigan.
>
> He has continuing pain in his back and right leg. The MRI does not show clear evidence of nerve root compression and at this time I would recommend an EMG to see if there is any documented evidence of any nerve root irritation.
>
> In the interim, I would recommend against lifting over 25 pounds or heavy pushing or pulling activities.

(Tr. 278-279). In contrast to the non-treating sources, Plaintiff's treating physician, Dr. Graham, found that Plaintiff could occasionally lift up to 10 pounds, stand and sit 20 minutes, walk 10 minutes and would need 20 unscheduled breaks in a workday (Tr. 283). On October 6, 2010, Dr. Graham completed a Physical Medical Source Statement indicating Plaintiff could occasionally lift/carry/upward pull *less than* 10 pounds, frequently lift/carry/upward pull *less than* 10 pounds and stand/walk with normal breaks *less than* two hours (Tr. 385). If not entitled to controlling weight, at a minimum, Plaintiff argues that Dr. Graham's October 6, 2010 opinion should be given more weight than Dr. Abrams and Dr. Middeldorf's opinions.

> The Sixth Circuit recently explained the weight an ALJ must afford medical sources:
>
> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), [20 C.F.R.] § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given

-9-

> "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).
>
> On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

*Gayheart v. Comm'r of Soc. Sec.*, 2013 WL 896255 at *9 (6th Cir. March 12, 2013).

The ALJ accorded "greater weight" to Drs. Abrams and Middeldorf's opinions because Dr. Abrams is a specialist in orthopedics and Dr. Middeldorf is a specialist in osteopathy:

> Greater restrictions are placed on [Plaintiff] by Dr. Peter Graham. However, Dr. Abrams and Dr. Middeldorf are specialists in orthopedics and osteopathy, respectively. Therefore, their opinions regarding [Plaintiff's] musculoskeletal capacity carry greater weight than that of Dr. Graham.
>
> 20 CFR [§] 404.1527 states, in pertinent part, that the opinions of treating physicians are given controlling weight in determining disability when they are well supported by medically acceptable clinical and diagnostic techniques and are not inconsistent with the other substantial evidence. A statement by a medical source that you are "disabled" or "unable to work" does not mean that you will be found disabled and while these opinions cannot be disregarded, they can never be entitled to controlling weight. When a treating source's opinion is not given controlling weight, the following factors are applied: (1) length of the treatment

-10-

> relationship . . . (3) supportability . . . (4) consistency . . . (5) **specialization** . . . (6) other factors.  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.  In this case, the specializations of Drs. Abrams and Middeldorf lend greater weight to their opinions.

(Tr. 26) (emphasis in original) (internal citations omitted).  The ALJ recognized – but failed to comply with – the regulations.  The ALJ did not provide *any* reasons – much less "good reasons" – for not affording Dr. Graham's opinion controlling weight; he did not discuss whether the opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques or whether it was consistent with the other substantial evidence in the case record.  "The failure to provide 'good reasons' for not giving [Dr. Graham's] opinion[] controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation."  *Id.* at *10 (citing *Wilson*, 378 F.3d at 544).  After failing to make a specific finding as to whether Dr. Graham's opinion was entitled to controlling weight, the ALJ also failed to apply *any* of the factors outlined in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii) and (c)(3)-(c)(6) to determine the amount of weight to give the opinion.  The ALJ attempted to comply with the regulations by applying the factors to Drs. Abrams and Middeldorf's opinions but even this attempt failed:  the ALJ only discussed *one* of the six factors and improperly afforded greater weight to the non-treating sources' opinions than Plaintiff's treating source opinion based on this one factor.

      The ALJ's failure to comply with the regulations was not a harmless error because the record does not establish that: (1) despite the ALJ's failure to comply with the terms of 20 C.F.R. § 404.1527(c)(2), he otherwise met the regulation's goal; (2) Dr. Graham's opinion was so "patently deficient" that it could not possibly be credited; (3) the ALJ adopted Dr. Graham's

opinion; or (4) the ALJ made findings consistent with the opinion.[4] *See Wilson*, 378 F.3d at 547.

This case should be remanded for further consideration of the treating source rule. On remand, the ALJ should conduct a medical source analysis that is consistent with the Sixth Circuit's discussion in *Gayheart* and outlined above.

## IV. CONCLUSION

Because the ALJ did not thoroughly discuss Plaintiff's nonexertional limitations and failed to properly apply the treating source rule, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the case be **REMANDED** to the Commissioner.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due

---

[4]While the ALJ gave Drs. Abrams and Middeldorf's opinions "greater weight" than Dr. Graham's opinion, the ALJ's determination of the amount of weight Plaintiff could lift was more consistent with Dr. Graham's February 4, 2010 opinion than Drs. Abrams and Middeldorf's opinions (Tr. 23, 283).

-13-

within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

                                             s/Mark A. Randon
                                             Mark A. Randon
                                             United States Magistrate Judge

Dated:  March 20, 2013

<u>*Certificate of Service*</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, March 20, 2013, by electronic and/or ordinary mail.*

                                             *s/Eddrey Butts*
                                             *Acting Case Manager for Magistrate Judge Randon*